**Lloyd LIEB, trading as Specialized Cassettes, Appellee,**

v.

**TOPSTONE INDUSTRIES, INC., and D. Robbins & Co., Inc., Appellants.**

**No. 85–5401.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant To Third Circuit Rule 12(6) Feb. 18, 1986.

Decided April 14, 1986.

Andrew S. Langsam, Mandeville and Schweitzer, New York City, for appellants.

Joseph Scalia, Alan P. Fox, Berry, Kagan, Privetera & Sahradnik, Toms River, N.J., for appellee.

Before WEIS and SLOVITER, Circuit Judges, and POLLAK,* District Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The district court granted summary judgment for defendants in this copyright infringement suit but denied statutory counsel fees without discussion. Because we are unable to determine whether the district court properly exercised its discretion, we will remand for an articulation of reasons. In an effort to assist the district courts, we review some of the factors pertinent to the award of fees under the Copyright Act as well as to the matter of sanctions under Fed.R.Civ.P. 11, which has also been invoked here.

Plaintiff had conceived the idea of an audio-cassette tape of sounds appropriate for Halloween. After producing and copyrighting his recording, titled "Haunted Horror," he entered into an agreement designating defendant Topstone Industries as the exclusive distributor. Topstone later terminated the contract and began marketing a similar Halloween cassette titled "Horror Sounds of the Night." After purchasing copies of the plaintiff's tape from Topstone, defendant D. Robbins & Co. sold those copies, as well as Topstone's "Horror Sounds" tape, to retail customers.

On learning of the defendants' activities, plaintiff filed a complaint in the district court alleging copyright infringement and pendent state law claims of breach of contract and bad faith.

During the course of discovery, plaintiff admitted he was not contending that any portion of Topstone's tape had been copied from the Haunted Horror production. Defendants moved for summary judgment, asserting that they had not violated the Copyright Act. In response, plaintiff argued that he believed in good faith that the defendant's tape was an "imitation of format, style, concept and content of plaintiff's copyrighted work" and would cause confusion in the public mind.

Defendants requested attorney's fees, contending that the copyright infringement claim was filed in bad faith, was frivolous, and should not have been brought after reasonable investigation.

The district court determined that the Copyright Act, 17 U.S.C. § 114(b), precludes duplication of a "sound recording [through forms that] directly or indirectly recapture the actual sounds fixed in the recording." The court granted summary judgment, concluding that defendants had not violated the Act because the legislative history makes clear that deliberate imitation does not contravene the limited protection extended to recordings. When plaintiff was unable to assert the requisite monetary amount to support diversity jurisdiction, the court dismissed the pendent state law claims as well. The court also ruled, without stating any reason, that the "[d]efendants' motion for attorney's fees is denied."

On appeal, defendants contend that the district court abused its discretion in failing to award counsel fees under the Copyright Act, or in the alternative, pursuant to Fed. R.Civ.P. 11.

### I.

■ We note preliminarily that the denial of the defendants' fee request is a final order, and therefore we have jurisdiction over this appeal. 28 U.S.C. § 1291; *see, e.g., Jeff D. v. Evans,* 743 F.2d 648 (9th Cir.1984), *cert. granted,* — U.S. —, 105 S.Ct. 2319, 85 L.Ed.2d 838 (1985). Where, as here, the district court disposes of both the substantive merits of the case and the request for counsel fees in the same order, we do not.face the more difficult situation where the order on the merits is final but some aspect of the fees question remains pending. *See White v. New Hampshire Dept. of Employment Sec.,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982); *West*

---

* The Honorable Louis D. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

v. *Keve,* 721 F.2d 91 (3d Cir.1983); *Badillo v. Central Steel & Wire Co.,* 717 F.2d 1160 (7th Cir.1983). *See also Nelson v. Piedmont Aviation, Inc.,* 750 F.2d 1234 (4th Cir.1984).

## II.

Section 101 of the Copyright Act, 17 U.S.C. § 505, states that "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party .... [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." This section was enacted in 1976 as a part of the revision of the Copyright Act, but the Act of 1909 similarly provided that "the court may award to the prevailing party a reasonable attorney's fee as part of the costs." 17 U.S.C. § 40.

Because the matter of fees under the Act is entrusted to the discretion of the district court, our standard of review is limited to determining whether that power has been abused. If the ruling of the court rests on factual findings, we may reverse only if they are clearly erroneous. If the trial court decided the issue on a legal precept, our review is plenary.

■ As the prevailing parties, defendants have made out a case for consideration of an award. Because we are not aware of the basis on which the district court ruled, however, we are unable to perform our appellate function, and therefore must remand.

The statutory language provides that the allowance of fees to the prevailing party is not mandated in every case but is entrusted to the evaluation of the district court. The proper limits within which that discretion must be exercised remain unclear despite more than three-quarters of a century of experience with the statute.

Cases in the Court of Appeals for the Ninth Circuit have established a finding of bad faith as a prerequisite for a grant of fees. *Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc.,* 777 F.2d 485, 493 (9th Cir.1985); *Jartech, Inc. v. Clancy,* 666 F.2d 403, 407 (9th Cir.1982). The Court of Appeals for the Eleventh Circuit has taken a less restrictive position. In *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 832 (11th Cir.1982), the court concluded that "a showing of bad faith or frivolity" is not required for an award. The "only preconditions ... [are] that the party receiving the fee be the 'prevailing party' and that the fee be reasonable." *Id.* at 832.

The decisions of other courts of appeals fall somewhere between these two extremes. In *Eisenschiml v. Fawcett Publications, Inc.,* 246 F.2d 598, 604 (7th Cir. 1957), the court reversed an award in favor of the defendant where the plaintiff had presented "a very close question." More recently that court found no abuse of discretion in a fee assessment where "there was abundant evidence that the infringement was willful." *Taylor v. Meirick,* 712 F.2d 1112, 1122 (7th Cir.1983).

The Court of Appeals for the Second Circuit appears to be shifting its standards. In *Edward B. Marks Music Corp. v. Continental Record Co.,* 222 F.2d 488, 493 (2d Cir.1955), that court denied fees to a defendant, noting that the litigation "was not vexatious but involved a novel question of statutory interpretation." The court also found "no basis for questioning the good faith of the plaintiff." *Id.* A divided panel affirmed an imposition of fees in *Mailer v. RKO Teleradio Pictures, Inc.,* 332 F.2d 747, 749 (2d Cir.1964), where the district court had found that although the plaintiff technically "had a legal argument," his claim was "unreasonable" and the court questioned whether it "was good as a matter of conscience."

The court adopted a double standard in *Diamond v. Am-Law Publishing Corp.,* 745 F.2d 142 (2d Cir.1984), deciding that prevailing plaintiffs generally should receive attorney's fees, but a defendant should recover only if the plaintiff's claims are "objectively without arguable merit." *Id.* at 148. Subjective bad faith as a prerequisite was held to be unnecessary. The court based its newly found need for differ-

entiation on a public policy to discourage infringement and to encourage plaintiffs to press "colorable" copyright claims. To the same effect, see *Grosset & Dunlap, Inc. v. Gulf & Western Corp.*, 534 F.Supp. 606 (S.D.N.Y.1982).

The *Diamond* case was roundly criticized in *Cohen v. Virginia Electric & Power Co.*, 617 F.Supp. 619 (E.D.Va.1985). That court found no support in the statutory language, legislative history, or policy considerations for anything other than an evenhanded approach. Finding no objective bad faith but noting that the "plaintiff lost and deserved to lose," the court awarded fees to the defendant, commenting however on the necessity for eliminating excessive charges. *Id.* at 623.

Precedents in this court are notable for their absence. The district judge in *Harms, Inc. v. Sansom House Enterprises, Inc.*, 162 F.Supp. 129, 136–37 (E.D.Pa. 1958), awarded a modest fee to the plaintiffs, remarking that because the case was one of first impression, "defendants should not be unduly burdened." We affirmed that award without discussion in *Leo Feist, Inc. v. Lew Tendler Tavern, Inc.*, 267 F.2d 494 (3d Cir.1959). In *Chappell & Co., Inc. v. Middletown Farmers Market & Auction Co.*, 334 F.2d 303 (3d Cir.1964), we approved an award of fees over a protest limited to the amount.

■ Given the lack of guidance from our earlier decisions, discussion of some of the relevant criteria may assist the district court on remand. We recognize at the outset that the statutory authorization is broad and evidences an intent to rely on the sound judgment of the district courts. Had Congress intended to condition the award of fees on the presence of bad faith, the statutory provision would have been surplusage. "[E]ven under the American common-law rule attorney's fees may be awarded against a party who has proceeded in bad faith." *Christiansburg Gar-*

*ment Co. v. EEOC*, 434 U.S. 412, 419, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978). We think that limiting assessments to those cases where bad faith is shown unduly narrows the discretion granted to the district judges. Finding no indication either in statutory language or legislative history that bad faith should be a prerequisite to a fee award, we decline to so limit the conditions under which an assessment may be made.

Nor do we accept the double standard for plaintiffs and defendants. Like the *Cohen* court, we find no justification for such a departure from the law's presumed equality of treatment. Although *Diamond* divined an intent to encourage copyright holders to pursue infringers, we note that in many cases the defendants are holders. Similarly, we fail to see the virtue in encouraging an attempt to enlarge the scope of the copyright monopoly beyond that conferred by the statute.

The defendants' analogy to the dual standard of the Civil Rights attorney's fees statutes—articulated in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), and specified in the legislative history to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988—is not apt. Substantially different policy considerations are present; moreover, in the reenactment of the Copyright Act that same year, 1976, Congress did not refer to a double standard.[1] The most reasonable interpretation is that Congress did not intend to introduce a dichotomy that had not been employed in the preceding sixty-odd years of the Copyright Act's existence.

Similarly, we do not believe Congress intended that the prevailing party should be awarded attorney's fees in every case as a matter of course. Were that the contemplated result, the statute would not have left the matter to the courts' discretion but would simply have mandated a fee allow-

---

1. As one court has observed: "The public policies to be subserved by the sanction of awarding counsel fees may vary from field to field. Unless cognate policies are to be enforced, the decisions in one field would not be valid analogies in another." *Cloth v. Hyman*, 146 F.Supp. 185, 192 n. 6 (S.D.N.Y.1956).

ance. That Congress was quite able to distinguish the alternatives is made clear by the language in section 40 of the predecessor statute: "Full costs *shall* be allowed, and the court *may* award ... a reasonable attorney's fee as part of the costs." (emphasis added).

■ Thus we do not require bad faith, nor do we mandate an allowance of fees as a concomitant of prevailing in every case, but we do favor an evenhanded approach. The district courts' discretion may be exercised within these boundaries. Factors which should play a part include frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence. We expressly do not limit the factors to those we have mentioned, realizing that others may present themselves in specific situations. Moreover, we may not usurp that broad area which Congress has reserved for the district judge.

■ Having decided that fees should be awarded, the district court must then determine what amount is reasonable under the circumstances. As we noted in *Chappell*, 334 F.2d at 306, the relative complexity of the litigation is relevant. Also, a sum greater than what the client has been charged may not be assessed, but the award need not be that large. *Harris v. Emus Records Corp.*, 734 F.2d 1329 (9th Cir.1984); *Key West Hand Print Fabrics, Inc. v. Serbin, Inc.*, 269 F.Supp. 605 (S.D. Fla.1966). The relative financial strength of the parties is a valid consideration, *American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc.*, 389 F.2d 903 (2d Cir.1968); *Italian Book Corp. v. American Broadcasting Companies, Inc.*, 458 F.Supp. 65 (S.D.N.Y. 1978), as are the damages, *Oboler v. Goldin*, 714 F.2d 211 (2d Cir.1983); *Russell v. Price*, 612 F.2d 1123 (9th Cir.1979); *Cloth v. Hyman*, 146 F.Supp. 185 (S.D.N.Y.1956). Where bad faith is present that, too, may affect the size of the award. *Landsberg v.*

*Scrabble Crossword Game Players, Inc.*, 736 F.2d 485 (9th Cir.1984).

In this case, plaintiff had ample opportunity to justify the filing of a lawsuit that patently had no legal merit. The principal justification plaintiff has proffered to this court has been the absence of bad faith, which as we noted above is not a prerequisite for the award of counsel fees under the Copyright Act. Thus, under ordinary circumstances, an award of some counsel fees to defendants would be appropriate. However, the arguments before the district court may suggest some other reason why an award of counsel fees is inappropriate, and we do not preclude the district court from so concluding on remand.

If the district court concludes that fees are proper, it should then consider the relative simplicity of the defense, and whether the retention of out-of-town counsel with the accompanying increased expense was necessary. The sum requested is large, and we note that it may be both disproportionate to the amount at stake and excessive in light of the plaintiff's resources. We emphasize that the aims of the statute are compensation and deterrence where appropriate, but not ruination.

### III.

On appeal, defendants also seek attorney's fees under Fed.R.Civ.P. 11. Plaintiff insists that the claim was not introduced in, or considered by, the district court and therefore we should not pass on it. Whether defendants did properly present the Rule 11 contention to the district court is a matter of some doubt, but in any event they may pursue the issue on remand. Because of the substantial overlap in the factors pertinent to Rule 11 and the Copyright Act, resolution of the sanctions claim should not be burdensome.

Rule 11 provides in part:
"Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... The signature of an attorney ... constitutes a certificate by him that he has read the pleading, ... that to

the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose.... If a pleading ... is signed in violation of this rule, the court ... shall impose ... an appropriate sanction...."

This version of the rule became effective in August, 1983 and was amended because its predecessor had been largely ineffective as a weapon against wasteful and abusive litigation tactics.

The first significant change was the adoption of an objective standard. As the Advisory Committee note states, "[t]his standard is more stringent than the original good faith formula and thus it is expected that a greater range of circumstances will trigger its violation." The rule imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to "stop, look, and listen."

The signature of counsel on a pleading certifies that a reasonable investigation of the facts and a normally competent level of legal research support the presentation. The requirement of reading is to forestall signatories who seek to disclaim the contents of a pleading prepared by either an associate or referring counsel.

█ Rule 11 therefore is intended to discourage pleadings that are "frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986); *see also Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535 (3d Cir.1985). "Simply put, subjective good faith no longer provides the safe harbor it once did." *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985). Rather, "[t]he test is now an objective one of reasonableness." *Eavenson*, 775 F.2d at 540. *See also In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985).

█ Counsel's certification also warrants that the pleading is not being used for an improper purpose, such as to cause harassment, undue delay, or needless increase in litigation expense. That test, too, is an objective one. The pleader may not escape liability because he did not intend to bring about additional delay or expense. If reasonable preparatory steps would have avoided those consequences, sanctions are appropriate. "There is no room for a pure heart, empty head defense under Rule 11." Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 187 (1985).

Rule 11 contains another material change in its statement that the "court ... shall impose ... an appropriate sanction." The use of "shall" was deliberate and carefully considered, and was intended to overcome the reluctance of courts to assess sanctions against erring counsel and parties. *See* Kassan, *An Empirical Study of Rule 11 Sanctions*, (Federal Judicial Center 1985). The tone of the rule makes clear that although trial judges still retain substantial discretion, its exercise is now directed more to the nature and extent of sanctions than to initial imposition. *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174 (D.C.Cir. 1985).

█ The rule avoids limitations on the kinds of sanctions which may be imposed but refers to those which are "appropriate." They "may" include expenses and counsel fees. The Advisory Committee states "[t]he court, however, retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case...." *See Davis v. Veslan Enterprises*, 765 F.2d 494 (5th Cir. 1985). Although a subjective test is not used in deciding initially whether sanctions should be imposed, it may be relevant in determining the form and amount of punishment or compensation. As the Advisory Committee note puts it, "in considering the nature and severity of the sanctions to be imposed, the court should take account of

the state of the attorney's or party's actual or presumed knowledge when the pleading or other paper was signed."

Thus, the conduct of an experienced lawyer or of a lawyer who acted in bad faith is more apt to invite assessment of a substantial penalty than that of a less experienced or merely negligent one. *See, e.g., Heuttig & Schromm, Inc. v. Landscape Contractors Council*, 582 F.Supp. 1519 (N.D.Cal. 1984). In that case, in addition to monetary sanctions the court also directed that the opinion criticizing the lawyer's pleading be circulated throughout his firm.

Influenced by the particular facts of a case, the court may decide that the circumstances warrant imposition of only part of the adversary's expenses or perhaps only a reprimand. In other cases, reference to a bar association grievance committee may be appropriate. The compensatory, punitive, and deterrent aspects of sanctions may have varying claims to priority, depending on the nature of the case and the violation, as well as on the standing of parties and counsel. For the reactions of trial judges to the various aspects of sanctions, see Kassan, *An Empirical Study.*

Although some similarity exists between fees which may be assessed under Rule 11 and under the Copyright Act, there are material differences as well. Neither mandates compensation, but if it is allowed, both grant substantial flexibility to the trial judge in fixing the amount. Rule 11 may be applied to only a small segment of the litigation, but the Copyright Act looks to the whole of the case. Furthermore, Rule 11 is more insistent on imposing sanctions where objectively a case lacks merit than is the Copyright Act. However, the rule offers a broader selection of remedies. Although it is possible that the Copyright Act and Rule 11 may in some circumstances apply to identical conduct, it should be understood that there should be no duplication of any recovery for counsel fees.

The consideration of counsel fees under both Rule 11 and the Copyright Act is a matter for the informed judgment of the district court. Because the record here

gives us no basis for reviewing the exercise of discretion by the district judge, we will remand for proceedings consistent with this opinion.